CITY OF NEW BERN v. ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY.

(Filed 18 September, 1912.)

1. Cities and Towns—Railroads—Use of Streets—Franchise—Contracts—Consideration—Prospective Conditions.

When the express consideration for a franchise given by a city to a railroad company for the latter to have a right of way for its railroad through a street is that the railroad shall keep and preserve the street in good order for the use of the citizens of the town, the railroad, by operating under its franchise, impliedly promises to perform the same obligations in respect to keeping up this street as the municipality should owe to its citizens, contemplating the growth of the city and such improvements as would be suitable and proper in the future.

2. Same—Paving Streets.

A railroad company, in consideration of having a right of way through the streets of a city, contracted with the city, at the time the street was a dirt street, but that it would keep and preserve the street in good order for the use of the citizens of the town. It appears that, owing to the increased size of the

city and travel over the street, it is necessary that the street should be paved with permanent material to insure the public a reasonable use of it: *Held,* the responsibility of the railroad under its contract extends beyond that of keeping the dirt street in proper condition, and it is its duty to meet the present requirement of paving for the use of the citizens.

APPEAL by defendant from *Whedbee, J.,* at May Term, 1912, of CRAVEN.

This is a civil action tried upon the pleadings, exhibits thereto attached, and agreed statement of facts, made a part of the judgment.

The purpose of the action is to secure a mandatory injunction commanding the defendant to pave Hancock Street in accordance with the terms of a written contract entered into between the plaintiff and the defendant on 12 April, 1856. His Honor gave judgment against the defendant, and the defendant appealed to this Court.

*W. D. McIver and R. A. Nunn for plaintiff.*
*Moore & Dunn for defendant.*

BROWN, J. It appears in the statement of facts that at the time this road was constructed, it was granted the franchise by the municipal authorities of New Bern, whereby it obtained the right of way for its railroad through Hancock Street, with a right to construct its roadbed and run its cars thereon.

The consideration of the franchise is expressed in the written contract entered into between the defendant and the municipal authorities, as follows: "Said railroad company shall, under the supervision of the town authorities and their engineers or agents, grade said Hancock Street and keep and preserve the same in good order for the use of the citizens of the town, except the sidewalks, and shall provide ample and convenient crossings of said railroad where the same may intersect any of the streets of the town, and build and construct all necessary aqueducts for the draining of said streets."

It seems to be admitted that the decision of this case depends entirely upon the construction of this contract, and the determination as to what obligation the defendant assumed.

We are of opinion that, fairly construed under the terms of the said contract, in consideration of the use of Hancock Street as a right of way, granted to it by the city authorities, the defendant assumed and promised to perform in respect to said street, except the sidewalks, the obligations which the municipality owed to its citizens in respect to the keeping up of the street.

This obligation is not to be measured by the size and condition of the city at the time when the contract was entered into. The increase of population and the consequent growth of the city must necessarily have been within the purview of the parties at the time the contract was made.

In a case very similar to the one at bar, the Supreme Court of Pennsylvania says: "The proposition that, because cobblestone was the kind of pavement ordinarily in use when defendant company was chartered, it is in no event bound to repave with any other and more expensive kind of material, etc., is wholly untenable. It cannot be entertained for a moment. It was never contemplated that the railway company would continue to exist and perform its corporate functions in a cobblestone age. It was called into being with the view of progress.

"The duties specified in its charter were imposed with reference to the changes and improved methods of street paving which experience might sanction as superior to and more economical than old methods. In other words, the company is bound to keep pace with the progress of the age in which it continues to exercise its corporate functions."

The phrase "keep and preserve in good order for the use of the citizens of the town" is to be construed with reference to the purpose to be accomplished, and to the character of the object to which the words apply. As has been said, "to keep the street in repair is to have it in such state as that the ordinary and expected travel of the locality may pass with reasonable ease and safety." *McMahon v. R. R.,* 75 N. Y., 236.

The Supreme Court of Massachusetts, in construing language very similar to that in the contract under consideration, says: "A provision in a charter of a tollbridge corporation that the bridge should at all times be kept in good, safe, and passable

repair, meant in such condition as befitted a public highway, and safe and convenient for all kinds of travel at all seasons and at all times, by day and night. *Commonwealth v. Central Bridge Corporation,* 66 Mass., 242, 244; 4 Words and Phrases, 3125.

The Supreme Court of Georgia, in *Atlanta v. Buchanan,* 76 Ga., 589, says: "To keep, applied to streets, sidewalks, and bridges, might very reasonably include the idea expressed by the words, 'to construct, to make,' especially when coupled with the words, 'in a reasonably safe condition for travel.' To keep a street in such safe condition means to have it so, to make and remake it so, to construct that sort of bridge, and reconstruct it when rotten or out of repair."

But the defendant contends that although it obligated to preserve and keep Hancock Street in good order, such obligation does not go to the extent of requiring it to pave the street, and the defendant cites a number of authorities in support of this contention. The defendant is confronted, however, in respect to this contention with an admission in the case agreed as follows:

"It is further admitted that by reason of the increased travel over said Hancock Street and by reason of the growth of the city and increase of the traffic through its streets, it is impossible to keep and maintain the said Hancock Street in good order as a dirt street, it being at the time of the execution of said contract a dirt street, and it has so remained up to this date; that in order to insure the public a reasonable use of the same, it has become necessary that the same should be paved with some permanent material; it is also agreed that it has remained and been used as a dirt street from date of contract to this time."

In construing the language of an ordinance granting a franchise similar to this, the Supreme Court of Pennsylvania says: "That the franchise to occupy and the obligation to keep in repair are coextensive, and that whatever the duty of a municipality would have been in respect to the streets where the tracks are laid is now the duty of the railway company laying and using the tracks. *Philadelphia v. R. R.,* 169 Pa., 270; *Atlanta v. Buchanan, supra.*

159—35

In a case somewhat similar, the Supreme Court of Minnesota says that this duty is a continuing one and has reference to future exigencies, and requires the railroad company from time to time to put the street in such condition as changed circumstances may render necessary for its proper enjoyment and use by the public. *Minneapolis v. R. R.,* 35 Minn., 131.

In the opinion the learned *Judge Mitchell* goes on to say: "The condition of the street might be entirely adequate for the accommodation of the public under one condition of things, and entirely inadequate under another; and consequently, a provision which at one juncture would be a discharge of this statutory duty, would at another amount to its violation."

The learned counsel for the defendant has cited a number of authorities which apparently sustain his proposition that the defendant cannot be compelled to pave this street, but that its obligation is confined to keeping it in repair as a dirt street.

While the cases appear on first view to be somewhat conflicting, yet all of the cases cited by the defendant seem to be founded upon the leading case of *Chicago v. Sheldon,* 76 U. S., 50. An examination of that case discloses that the ordinance in question, by which the city of Chicago granted to the railway company the right to construct a railway, set out with minute particularity the duties which the railway company was to perform, and specified those duties as relating to the "grading, paving, macadamizing, filling, or planking of the streets or parts of the streets upon which they shall construct their railways."

The Supreme Court of the United States held that under the language of this ordinance the company could not be held liable for, curbing, grading, and paving the streets with entirely new pavement, and that the obligation of the company extended to repairs only.

We do not think the case is similar to the one under consideration. In our case the defendant has assumed an obligation to keep and preserve the street in good order for the use of the citizens of the town, except the sidewalks, and it is admitted in the case agreed that this obligation can only be kept in order to insure the public a reasonable use of Hancock Street by paving it with some permanent material.

It is admitted that all the other streets of the city, with the exception of one, are paved with modern paving material, and that that street is not a very important street, and is paved with oyster shells. The public have the right to use Hancock Street, and it is admitted that there is much passing and hauling upon it.

Inasmuch as the defendant cannot keep it and preserve it in good order and condition as a dirt street, so that the public may use it, we think its obligation can only be met by paving it with some substantial material.

The judgment of the Superior Court is
Affirmed.