IN RE THE ASSIGNMENT OF JAMES VARNER TO TRINITY SCHOOL.

(Filed 4 February, 1966.)

**1. Schools § 10—**

Our Pupil Assignment Law places the duty upon the board of education of the respective administrative units to assign and reassign pupils in accordance with the procedures and standards set forth in the Act, with emphasis on the welfare of the individual pupil and the effect of assignment and reassignment upon the respective units, and this duty the board must exercise in accordance with the standards set forth in the statute, and it may not by contract or agreement limit its power in this regard, notwithstanding any coercion or threat to withhold school aid funds by an employee of the Federal Government, or otherwise. G.S. 115-176.

**2. Same—**

The Civil Rights Act of 1964 has no application to proceedings to determine to which of two administrative units a pupil should be assigned when such proceeding is based solely on the welfare of the individual pupil and the proper administration of the schools, without any indication that race had anything to do with the application for reassignment.

**3. Same—**

Upon appeal from an order of a board of education upon an application for the reassignment of a child, the court hears the matter *de novo* as though no action had theretofore been taken, G.S. 115-179, and the court has the power to assign or reassign the pupil subject only to the standards and limitations prescribed by the Pupil Assignment Law.

**4. Same—**

Under the Pupil Assignment Law as amended, an administrative unit may not permit to be enrolled in one of its schools a child who resides in the territory of another unit solely upon its own willingness to do so and the desire of the child or its parents to attend that school, but it is also necessary that the assent of the board of the unit in which the child resides be obtained. On appeal, however, the court may reassign the pupil without such assent.

**5. Same— Court may properly continue order restraining reassignment of pupil upon a prima facie showing.**

This action was instituted for a temporary injunction restraining the county board of education from enforcing its assignment of petitioners' child to a school in the unit of his residence pending the final determination of the parents' action for the reassignment of the pupil to the unit in which he had theretofore gone to school. *Held:* Upon the making out of a *prima facie* case by showing that children in the locale had attended school in the administrative unit of another county for some 30 years, and evidence supporting the conclusions that the best interest of the child required that he be reassigned to such unit, and that such unit had stated in writing that it would accept the child, the temporary restraining order is properly continued to the hearing.

**6. Same—**
> Where the unit to which the parents wish to have their child reassigned has expressed in writing its willingness to accept such child, such unit is not a necessary party to an action for reassignment.

**7. Injunctions § 13—**
> The purpose of an interlocutory injunction is to preserve the *status quo* until there can be a judicial determination on the merits, and an order will ordinarily be continued upon a *prima facie* showing of plaintiff's right to the final relief sought.

APPEAL by respondent from *Walker, S.J.,* 28 August 1965 Session of RANDOLPH.

James Varner resides with his parents in Randolph County on Route 3, Thomasville. At the time this matter arose he was 15 years of age and in the 9th grade. He has never attended a public school in Randolph County. For 30 years children residing in the portion of Randolph County in which the Varner family live have attended the schools of Davidson County by agreement of the boards of education of the two counties, no tuition being charged by Davidson County on account of the attendance of its schools by such children. In the school year 1964-1965 this boy attended the Fair Grove School in Davidson County and, but for the action of the Randolph Board of Education noted below, would have been enrolled in and would have attended the East Davidson High School for the 1965-66 school year, this school being a replacement of the Fair Grove school, apparently by consolidation. There is ample room for him in the East Davidson High School and the Davidson County Board of Education is willing to enroll him there and permit him to attend it. This is what he and his parents want him to do.

On 10 June 1965, with no request therefor from the boy or his parents, the Board of Education of Randolph County assigned James Varner to the Trinity School, in Randolph County, for the 1965-66 school year and so notified him and his parents.

In due time, 18 June 1965, the parents of the boy filed with the Board of Education of Randolph County their application, proper in form, for the reassignment of their son to East Davidson High School, stating thereon the following reasons:

> "The distance to the school to which the child has been assigned is much greater than the distance to the school previously attended, and to which reassignment is requested.
>
> "The curriculum offered at the school to which reassignment is requested includes a greater range of subjects enabling the child to plan a course of study which will better qualify the child for college.

"The child is pursuing a course of study under a planned curriculum at the school to which reassignment is requested which includes subject matters not offered at the schools to which assignment has been made. This may require a new course of study unsuitable for the child, and which may delay ultimate graduation beyond the year in which such is intended.

"The children in this area have been attending Davidson County schools for over 30 years.

"The reassignment requested herein is for the best interest of the child."

The application for reassignment was denied. In due time the Varners requested a hearing by the Board of Education of Randolph County, which hearing was had on 22 July 1965, and the Board again denied the application. Again in due time, Mr. and Mrs. Varner gave to the Board notice of their appeal to the Superior Court of Randolph County where the matter now awaits hearing and final determination.

Within a few days after their notice of appeal, and prior to the opening of the 1965-66 school year, the Varners filed in the Superior Court their verified application for the issuance of a temporary injunction restraining the Randolph County Board of Education from enforcing the assignment of the boy to Trinity School, pending the final determination of their appeal, and for the issuance of an order directing that he be allowed to attend the East Davidson High School during the pendency of the case. From the order of the Superior Court so restraining the Randolph County Board of Education, pending the final determination of the cause, and reassigning the boy to East Davidson High School, pending the final determination of the matter, the Randolph County Board of Education now appeals to this Court.

At the hearing in the Superior Court upon the application for the temporary injunction and temporary reassignment the Varners offered evidence tending to show, in addition to the foregoing matters, the following:

(1) James Varner would have to travel 19.2 miles to attend the Trinity School, to which the Randolph Board assigned him, as compared with only 7.4 miles to attend the East Davidson High School.

(2) The Davidson County Board of Education is willing to accept him for enrollment in the East Davidson High School without any tuition charge.

(3) The East Davidson High School has proper facilities to take care of the students from that area of Randolph County from

which children have been attending Davidson County Schools for thirty years. The school is fully accredited. (A copy of its courses of study was placed in evidence.)

(4) Schools of Randolph County, including the Trinity School, would be overcrowded for the 1965-66 school year.

(5) This boy has never previously been assigned to the school to which the Randolph Board has now assigned him (Trinity) and the change in schools is "emotionally disturbing to the child."

(6) The curriculum offered at the East Davidson High School "includes a greater range of subjects enabling the child to plan a course of study which will better qualify the child for college."

The Randolph County Board of Education offered evidence tending to show that due to a recent reorganization the Trinity School is no longer overcrowded, that its high school is fully accredited but its junior high school "has not been evaluated."

The Board also offered in evidence a letter from one Francis Keppel, United States Commissioner of Education, the pertinent portions of which state:

"The plan submitted by the Randolph County Schools for the desegregation of its school system in compliance with Title VI of the Civil Rights Act of 1964 has been reviewed by this Office. On the basis of our review of the plan * * * I have determined that pursuant to the understanding below the plan * * * is adequate to accomplish the purposes of the Act and the Regulation of the Department of Health, Education, and Welfare (Section 80.4(c).)

"Based upon conversations which you had with members of our staff, we understand * * * that no pupils residing inside Randolph County will be assigned to schools outside the County; and that no pupils residing outside Randolph County will be assigned to schools inside the County. * * * Based on the understandings, the plan provides a basis for the approval of applications and for the payment of Federal financial assistance at this time." (Emphasis added.)

The Board also offered in evidence a letter from one David S. Seeley, Director, Equal Educational Opportunities Program, Department of Health, Education and Welfare, Washington, D. C., the pertinent portions of which state:

"It is understood that your request grows out of the applications of approximately 128 white pupils residing in Randolph County for reassignment to Schools in Chatham County, and the applications of approximately 56 white pupils residing in

Randolph County who wish to attend schools in Davidson County. * * *

"The Office of Education * * * reaffirms its approval of the Randolph County Plan as heretofore accepted. *Any reassignment as suggested above would constitute noncompliance with the approved plan.*" (Emphasis added.)

The Superior Court found the following facts, which findings it incorporated into its order:

"1.   That this matter is properly before the Court * * *.

"2.   That evidence was presented tending to show:

a.   That the child above named will be required to travel greater distances in order to reach Trinity School to which assigned than to East Davidson School, to which reassignment is requested.

b.   That Trinity School is in a crowded condition.

c.   That the East Davidson School is not overcrowded and can accommodate the child of the applicants.

d.   That if the child is reassigned by the Court to the East Davidson School the Court finds from the evidence presented that the child will be accepted by the Davidson County Administrative Unit.

e.   That the child has never previously been assigned to the Trinity School.

f.   That for more than 30 years those persons of qualifying school age and grade residing in the community or surrounding area of the applicants have been attending East Davidson School or the school in that area which the said school replaced.

g.   That the child of this applicant in past years has been assigned and sent to the East Davidson School with the sanction and approval of the Randolph County Board of Education. * * *

"And it further appearing to the Court:

"1.   That there was no evidence presented showing that the assignment of the child of this applicant to the school requested would interfere with the proper administration of either of the affected schools.

"2.   That unless the Court enjoins the enforcement of the assignment by the Board of Education and issues such orders and directives necessary to permit the child to attend the school to which reassignment is requested pending final termination of this cause, there is reasonable apprehension that irreparable

harm and damage will result to the child and that this matter will not be tried before school commences thereby denying the relief which might be given by jury verdict and for which these applicants have shown much merit and good cause.

"3. That these applicants have no plain, adequate or speedy remedy at law.

"4. That the reassignment to the school requested pending final determination of this cause is in the best interest of the said child."

*Smith & Casper by Archie L. Smith, Charlie B. Casper for petitioner appellee.*
*Miller & Beck by G. E. Miller for respondent appellant.*

LAKE, J.  In this Court the appellant Board demurred on the ground that the Court had no jurisdiction to assign the Varner boy to a school in the Davidson County Administrative unit in absence of an agreement between the two units. The demurrer is overruled. *Application for Reassignment of Hayes,* 261 N.C. 616, 135 S.E. 2d 645.

In its brief the appellant Board states that its decision to deny the application for the reassignment of the Varner child was reached upon the basis of the above mentioned letters to it from Messrs. Keppel and Seeley. It then refers to the Federal Civil Rights Act of 1964 and states:

"The violation of a requirement or standard set by this law or the regulations authorized by it, or actions taken pursuant to either, which curtails a program established under Federal law will transcend the limitations of State administrative or judicial power."

The Legislature of 1955 enacted what is now known as the Pupil Assignment Law, which was amended in some respects by the same Legislature at its Special Session of 1956. G.S. 115-176 to G.S. 115-179. That statute provides, "Except as otherwise provided in this article, the authority of each board of education in the matter of assignment of children to the public schools shall be full and complete, * * *." G.S. 115-176. Concerning applications for the reassignment of pupils it states, "If, at the hearing, the board shall find that the child is entitled to be reassigned to such school, *or* if the board shall find that the reassignment of the child to such school will be for the best interests of the child, and will not interfere with the proper administration of the school, or with the proper instruction of the pupils there enrolled, and will not endanger the health

or safety of the children there enrolled, the board *shall* direct that the child be reassigned to and admitted to such school." (Emphasis added.) G.S. 115-178. The statute then provides for an appeal by "any person aggrieved" from the order of the board to the superior court where the matter is to be heard *de novo*. G.S. 115-179. The Varners are "persons aggrieved" by the action of the Board. *Re Application for Reassignment*, 247 N.C. 413, 101 S.E. 2d 359.

Speaking of the Pupil Assignment Law in his concurring opinion in *Application for Reassignment of Hayes, supra*, Rodman, J., who served with distinction in that Legislature and played a major role in the enactment of the law, especially in the revisions of it by the Special Session of 1956, said:

> "It is the *duty* of the board to reassign if 'the reassignment of the child to such school will be for the best interest of the child and will not interfere with the proper administration of the school.'" (Emphasis added.)

In the same case, speaking for the majority, Higgins, J., said:

> "It is worthy of note that the statute places all emphasis on the *welfare of the child and the effect upon the school to which reassignment is requested.*" (Emphasis added.)

The State has entrusted to the appellant Board, and to like boards in other county and city administrative units, the "full and complete" power to assign and reassign each child residing within its unit to a public school, subject only to the standards and limitations prescribed by the Pupil Assignment Law, including the power of the courts of this State to hear *de novo* an appeal from the final order of the Board and, thereupon, to enter the appropriate order. The Act imposes upon the Board, and upon the courts on appeal from it, a solemn duty, for in applying this Act to the application for the reassignment of a child, the Board is dealing with an asset of the State which cannot be valued in the terms of the market place. It is the best interest of the applying child which must guide the deliberations and control the decision of the Board, unless the granting of the application will interfere with the proper administration of the school to which the child seeks reassignment or will endanger the proper instruction, the health or the safety of the other children enrolled therein. Of course, the board of one administrative unit cannot assign a child to a school in another administrative unit without the consent of the board of the other unit.

The Pupil Assignment Law does not authorize the Board to abdicate or delegate this duty to exercise the power so entrusted to it for the best interests of the applying child. The Board may not, in

the hope of receiving money for its school, shut its eyes to the mandate of the statute. It may not, by contract or otherwise, transfer this power to an employee of the Federal Government, or bind itself to exercise it as he may direct, or in any other manner than that provided in the Act, or for any purpose other than that for which the State conferred the power upon it. No agreement of the Board with anyone, be he an employee of the Federal Government or otherwise, can authorize the Board to deny an application for reassignment which the Legislature, by a statute within its authority to enact, has provided that the Board shall grant. No such agreement of the Board can deprive the courts of this State of jurisdiction conferred upon them by such a statute, or bar the court, before which an appeal from the Board's order is brought as provided by the statute, from entering the judgment prescribed in such case by the statute.

So long as the Pupil Assignment Law remains the law of North Carolina, the courts of this State in passing upon appeals from orders of the Boards of Education concerning applications for the reassignment of children to the public schools, will determine the right to reassignment in accordance with the standards prescribed by the statute, not pursuant to agreements between the Board and another or letters from such other party setting forth his *ex parte* construction of the alleged agreement.

The Pupil Assignment Law provides, "A child residing in one administrative unit may be assigned either with or without the payment of tuition to a public school located in another administrative unit upon such terms and conditions as may be agreed in writing between the boards of education of the administrative units involved and entered upon the official records of such boards." G.S. 115-176. Obviously, the Legislature contemplated agreements between boards acting within the framework of the statute and free to accomplish its purpose — the assignment of the individual child to the school where his or her "best interest" would be served without disruption of that school. It is not within the fair intendment of this law that a board may enter into an agreement with some other agency or person that, come what may and regardless of the welfare of the applying child, the board will never agree to assign any child to any school in another county. That is what the Randolph County Board of Education now tells us it has done.

The Civil Rights Act of 1964 has no application to this matter. There is nothing in the record to indicate that race had anything to do with the application of the Varners for the reassignment of their son to the East Davidson High School. On the contrary, the record contains abundant evidence that they are simply requesting that he

be allowed to return to the administrative unit where he has attended schools from the beginning of his school career, where his school friends are, where the children from his neighborhood have gone to school for thirty years.

Under the Pupil Assignment Law, as amended in 1956, the board of education of one city or county administrative unit may not permit to be enrolled in one of its schools a child who resides in the territory of another unit solely upon its own willingness to do so, plus the desire of the child or its parents to attend that school. Nothing else appearing, the assent of the board of the unit in which the child resides must be obtained. *Fremont City Board of Education v. Wayne County Board of Education*, 259 N.C. 280, 130 S.E. 2d 408. This is a protection to each unit against raids upon its student body by another unit so as to gain additional teacher allotment by the State on account of increased enrollment, or so as to gain accomplished athletes, or for any other purpose. Whether the board of the county of residence, after nine years of acquiescence in a child's going to another unit's school, may arbitrarily make him come home when, in the tenth grade, he shows ability as a football player we need not now decide. There is nothing to indicate that James Varner has any such ability.

The Pupil Assignment Law provides that, upon appeal from the Board to the Superior Court, the matter shall be heard *de novo. In the matter of Application for Reassignment of Hayes, supra,* this Court held that, upon such appeal, the Superior Court has the authority to reassign the child to a school of another administrative unit even though the board of education of the administrative unit wherein the child resides objects. The language of the statute, G.S. 115-179, is:

> "If the decision of the court be that the order of the county or city board of education shall be set aside, then the court shall enter its order so providing and adjudging that such child is entitled to attend the school as claimed by the appellant, or such other school as the court may find such child is entitled to attend, and in such case such child shall be admitted to such school by the county or city board of education concerned."

The matter being heard in the superior court *de novo,* it is as if it were before the court in the first instance. That is, the court has the same powers, the same duties and the same standards to guide it as the board had in the first instance. It has the authority to reassign the child to the school which he and his parents want him to attend, if that is in the best interest of the child and the child's enrollment therein will not interfere with the proper administration

of that school or endanger the instruction, the health or the safety of the other pupils there enrolled. The court, by its order, supplies that which was found lacking in *Fremont City Board of Education v. Wayne County Board of Education, supra* — the consent of the unit of the child's residence. This is the protection to that unit against unwarranted raids upon the student bodies of its schools.

We need not decide now whether the court, upon such appeal, may order the enrollment of the child in a school of an administrative unit other than that in which the child resides over the objection of the board of education of that other unit. Here, the record contains a statement by the Chairman of the Davidson County Board of Education to the effect that it will accept this boy if the court assigns him to the East Davidson High School. It is not necessary under these circumstances that the Davidson Board be made a party to this proceeding.

To hold otherwise would make the child the captive of the schools of the area where he resides, however inadequate for his needs they may be, if the board of education of that area arbitrarily refuses to grant his request to go to another school willing and ready to receive him. We do not think that was the intent of the Legislature in providing for an appeal to the court from the order of the board.

It has not yet been determined where James Varner should go to school; that is, whether it is in his best interest to attend the East Davidson High School or the Trinity School, or whether his enrollment in the school of his parents' choice would interfere with the administration of that school or endanger the instruction, health or safety of the other children there enrolled. That decision must be reached through trial of the matter by a jury in the superior court, unless jury trial be waived as it was in the matter of *Application for Reassignment of Hayes, supra.* G.S. 115-179.

This appeal is from an interlocutory injunction and a temporary assignment *pendente lite.* The purpose of such an injunction is to preserve the status quo until a trial can be had on the merits, the applicant having made a *prima facie* showing of his right to the final relief he seeks in the proceeding. *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590; *Edmonds v. Hall,* 236 N.C. 153, 72 S.E. 2d 221; *Harrison v. Bray,* 92 N.C. 488; Strong, N. C. Index, Injunctions, § 13.

The effect of the order below is to permit James Varner to continue to attend the school system he has been attending since his education began nine years ago, pending the final determination of the matter. It would obviously be detrimental to him to shift him to an entirely different school system, which he objects to attending

and where he would, presumably, be an unhappy student, and then back again to the East Davidson School if the jury finds that to be in his best interest. For this interference with his educational program he and his parents would have no adequate remedy at law. No substantial injury can be done to the appellant Board, or to the schools under its administrative control, by permitting this boy, who has never attended a school in Randolph County, to attend the East Davidson High School pending the jury's determination of the matter.

There is ample evidence in the record to support each finding of fact made by the court below, except the finding that the Trinity School is presently overcrowded. The greater weight of the evidence on that point is that it has been recently reorganized and converted into a different type of school than it formerly was, so that there is now ample space therein for the pupils assigned to it. However, this finding is relatively immaterial to the decision of the matter.

Affirmed.